### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ILIRJAN FERKO, ELISABETA FERKO** | **:** | **CIVIL ACTION** |
| | **:** | |
| | **:** | |
| **v.** | **:** | **NO.  25-1028** |
| | **:** | |
| **JOHN M. ALLEN, KIKA SCOTT, KRISTI NOEM** | **:** | |
| | **:** | |

## <u>MEMORANDUM</u>

**MURPHY, J.**                                                                **March 30, 2026**

Ilirjan Ferko, an Albanian native living in Albania, has been trying to get a visa to enter the United States since 2004 — the year his wife, Elisabeta Ferko, and their two daughters obtained admission into the United States.  Three times, the State Department has denied Mr. Ferko a visa, finding him inadmissible under various provisions of the Immigration and Nationality Act (INA) due to his criminal record in Albania.  Mr. Ferko has little regard for the purported judgments of the long-defunct and repressive communist regime that ruled Albania at the time of his convictions.  After the third denial, Mr. Ferko applied for a waiver of inadmissibility with the Department of Homeland Security's United States Citizenship and Immigration Services (USCIS).  USCIS likewise found Mr. Ferko inadmissible (and also ineligible for an inadmissibility waiver) due to his criminal history.

The Ferkos now challenge USCIS's inadmissibility and waiver eligibility determinations, as well as the procedure it followed to reach these determinations, seeking relief under the Administrative Procedure Act (APA) and Declaratory Judgment Act (DJA).  Seeing no dispute of fact, the parties have filed cross motions for summary judgment, while defendants also move for dismissal on jurisdictional and relief-based grounds.  For the following reasons, we deny defendants' motions in their entirety, while we partially grant and partially deny

plaintiffs' motion for summary judgment.  The Ferkos correctly identified a legal error that USCIS made in assessing whether Mr. Ferko's convictions were crimes of moral turpitude. Pursuant to our partial grant of summary judgment in plaintiffs' favor, we vacate USCIS's decision regarding Mr. Ferko's application for a waiver of inadmissibility and remand to USCIS for renewed consideration of his waiver application.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

## A.      Personal history and Albanian criminal record

The Ferkos have spent 22 years of their 33-year marriage living thousands of miles apart. DI 8 at ¶¶ 1-2; DI 21 at 3.  Both are natives of Albania.  DI 8 at ¶¶ 1-2; DI 21 at 3.  In 2004, Mrs. Ferko was admitted to the United States, along with the couple's two daughters, under the Diversity Immigrant Visa Program (also known as the "Green Card Lottery").  DI 8 at ¶¶ 1-2; DI 21 at 3.  Mrs. Ferko and the daughters are naturalized U.S. citizens.  DI 8 at ¶¶ 1-2; DI 21 at 3.

Meanwhile, Mr. Ferko has been living in Albania.  In 1985, Mr. Ferko was declared guilty of three crimes under the Penal Code of the People's Socialist Republic of Albania (Albanian Code): (1) "murder committed for weak motives remain[ing] in the stage of attempt[,]" for which he was sentenced to seven years of detention; (2) "insults due to duty committed openly[,]" for which he was sentenced to eight months of reeducation through work; and (3) "breach of regulation of guar[d] service[,]" for which he was sentenced to five months of reeducation through work.  DI 20-5 at 27.  At the time of Mr. Ferko's declarations of guilt, there

---

[1] Defendants accept plaintiffs' facts as stated in the amended complaint for purposes of defendants' combined motion to dismiss and motion for summary judgment.  DI 20 at 7 n.1. Accordingly, we cite to the amended complaint (DI 8) and plaintiffs' motion for summary judgment (DI 21) for the factual and procedural background.

was no independent judiciary; rather, the Party of Labor directly controlled the legal system and the private practice of law was banned.  DI 8 at ¶ 3.  Mr. Ferko had no right to counsel, to present a defense, or to confront witnesses, and he was limited in his ability to object to evidence.  *Id.*  Article 1 of the Albanian Code began with this prelude:

> An important duty of the penal legislation of the People's Socialist Republic of Albania is the fight against bureaucratism and liberalism as the chief dangers to the state of the dictatorship of the proletariat. The penal legislation of the People's Socialist Republic of Albania also has the task of aiding in the full construction of socialism and communism in accordance with the principle of self-reliance, and of contributing to the education of the citizens in a spirit of respect for socialist legality.

DI 20-8 at 14.  Moreover, it defined a penal act as "any socially dangerous action or inaction involving guilt and anticipated by law[]" where "[s]ocially dangerous [acts] are acts directed against the socialist state, the Workers' Party of Albania, socialist wealth, a person, his rights and interests, and the whole socialist social order."  *Id.* at 15.

## B.      Procedural history

In 2004, 2010, and 2019, Mr. Ferko applied for immigrant visas at the U.S. Embassy in Albania but was denied after the consular officers determined he was ineligible under INA § 212(a)(2)(A)(i)(I) because he was convicted of a crime involving moral turpitude (CIMT) — attempted murder — as well as § 212(a)(2)(B) because he had multiple criminal convictions.  DI 20-8 at 78; *see also* 8 U.S.C. § 1182(a)(2)(A), (B).[2]  In the 2019 determination, the consular officer also determined that no waiver of inadmissibility was available under INA § 212(h).  DI

---

[2] For ease of reference, section 212 of the INA, and § 1182 of the INA, are synonymous — section 212 is the public law section number, while § 1182 is the corresponding section codified in the United States Code.  Case law references these sections interchangeably.

20-8 at 83; 8 U.S.C. § 1182(h).[3]  In response, Mr. Ferko's attorney emailed the consulate in

Albania arguing that its findings were "clearly erroneous" because (1) attempted murder

constituted "a purely political offense" given the "substantial evidence that the entire Criminal

Code of the People's Socialist Republic of Albania is purely political and predicated on

repress[]ive measures against any political dissent"; and (2) Mr. Ferko's other offenses could not

be considered because there were no equivalent crimes under U.S. law.  DI 20-8 at 83-85

(citation modified).  Two weeks later, the U.S. consulate responded, reiterating that "USCIS may

not provide a waiver to [a non-citizen] who has been convicted of an 'attempt or conspiracy to

---

[3] Section 212(h), codified at 8 U.S.C. § 1182(h), governs waivers of inadmissibility determinations under, *inter alia*, 8 U.S.C. § 1182(a)(2)(A)(i)(I)-(II).  This provision states:

> The Attorney General may, in his discretion, waive the application of subparagraphs (A)(i)(I), (B), . . . if-
>
> > (1)(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien; or . . .
> >
> > (2) the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa, for admission to the United States, or adjustment of status.
> >
> > No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture. . . . No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

*Id.*

commit murder'" such that, due to his attempted murder conviction, "Mr. Ferko [was] permanently ineligible to apply for a waiver." *Id.* at 82. However, the consulate noted that it could not prevent Mr. Ferko from applying for a waiver from USCIS, while it also suggested that he contact the State Department's LegalNet,[4] presumably for a more thorough explanation. *Id.*

Mr. Ferko then applied to USCIS for a Waiver of Inadmissibility (I-601), arguing that (1) his convictions under the Albanian Code should not stand because they (a) "were not entered by a fair and impartial tribunal" and (b) "were for purely political offenses"; and (2) his attempted murder conviction under the Albanian Code did not punish "morally turpitudinous" conduct. DI 8 at ¶ 6; DI 21 at 6-7.[5]

While Mr. Ferko's waiver application was pending with USCIS, on May 10, 2022, his attorney emailed LegalNet requesting an advisory legal opinion, asserting that the consular officer's determination that Mr. Ferko was inadmissible "[wa]s wrong as a matter of law." DI 20-8 at 80. By September 7, 2022, LegalNet responded that it found "no legal error." *Id.* at 78. LegalNet cited the State Department's Foreign Affairs Manual (FAM) which defines a CIMT as:

> The presence of moral turpitude is determined by the nature of the statutory offense for which the applicant was convicted, particularly in the wording of the specific law that the applicant was convicted under, and not by the acts underlying the conviction. Therefore, evidence relating to the underlying act, including the testimony of the applicant, is not relevant to a determination of whether the conviction involved moral turpitude except when the statute is divisible . . . or a political offense[.]

---

[4] LegalNet is a nonbinding authority operating under the State Department that provides legal analysis for attorneys and visa petitioners. Here, the LegalNet opinion stated that, upon review of Mr. Ferko's three immigrant visa cases, it found no legal error in the consular officer's application of sections 212(a)(2)(A)(i)(I) and 212(a)(2)(B) to Mr. Ferko. DI 20-8 at 79.

[5] After that application was rejected for technical reasons in January 2022, Mr. Ferko refiled in February 2022. DI 11-2 at 5; DI 21 at 7.

9 FAM 302.3-2(B)(2)(b).

One day after LegalNet's response — and while Mr. Ferko's waiver application remained pending with USCIS — the Ferkos filed an action before us under the APA. DI 21 at 7. They argued that Mr. Ferko had "sought consideration or waiver of the inadmissibility determination through numerous channels over the course of years, to no avail and at great cost to his family" and that USCIS' "continued failure to address his challenges to the Consulate's inadmissibility determination amount[ed] to agency inaction." *Id.* (citation omitted). We dismissed the action without prejudice on August 4, 2023, because the issues were not ripe for adjudication, given Mr. Ferko's waiver application remained pending. *Ferko et al. v. Miller et al.*, No. 22-cv-2661, ECF 24 at ¶ 7. We also expressly did not opine on the reviewability of USCIS's decision respecting Mr. Ferko's waiver application. *Id.* at ¶ 7 n.6.

USCIS ultimately denied Mr. Ferko's waiver application on January 29, 2025. DI 20-4 at 1-2. USCIS stated that Mr. Ferko's attempted murder conviction under the Albanian Code (1) constituted a CIMT that was "not a purely political offense[,]" such that he was inadmissible under section 212(a)(2)(A)(i)(I); and (2) rendered him ineligible for an inadmissibility waiver under section 212(h)(2). *Id.* at 1-2. USCIS also stated that Mr. Ferko's convictions for two or more offenses, for which his aggregate sentences of confinement were five or more years, rendered him inadmissible under section 212(a)(2)(B). *Id.* at 1. In its decision, USCIS asserted that "[i]n overseas visa application cases, the Department of State (DoS) makes the inadmissibility determination and USCIS's role is simply to adjudicate waiver applications according to the applicable statutory provisions" and noted that the consulate had previously found Mr. Ferko's arguments lacked merit. *Id.*

6

On February 26, 2025, Mr. Ferko filed a motion for reconsideration of USCIS' decision, in which he requested reconsideration of USCIS's inadmissibility findings on four grounds. DI 20-3 at 20-34. First, Mr. Ferko asserted that, under the categorical approach, attempted murder under the Albanian Code did not constitute a CIMT because "criminal attempt" under the Albanian Code was broader than "criminal attempt" under U.S. law.[6] DI 20-3 at 21. Second, Mr. Ferko averred that the Albanian Code offenses of "insulting a person because of his state or social activity" and "violat[ing] [ ] the rules of guard duty by a soldier" do not constitute punishable crimes under U.S. law. *Id.* Third, Mr. Ferko contended that the Albanian Court's "Declaration of Guilt" against him did not constitute a "conviction" under section 101(a)(48)(A) of the INA because it lacked the procedural safeguards associated with a fair trial — such as the right to counsel, to present a defense, and to cross-examine witnesses — and was not issued by an impartial, independent, and fair tribunal. *Id.* Fourth, Mr. Ferko insisted that this "Declaration of Guilt" demonstrated that he was convicted for purely political offenses as understood in section 212(a)(2)(A)(i)(I) of the INA. *Id.* at 22.

In April 2025, USCIS denied Mr. Ferko's motion to reconsider, concluding that his motion failed to provide new facts or reasons for reconsideration supported by precedent. DI 20-3 at 5. Before delivering its rationale for doing so, USCIS explained that "[p]rior to rendering any decision in any overseas immigrant visa application waiver case, USCIS reviews consular findings of admissibility and official records and makes an independent determination as to whether the consulate's findings of inadmissibility are supported by the record." *Id.* USCIS

---

[6] As the Ferkos argue in the instant case, the overbreadth argument rests on the assertion that "criminal attempt" under the Albanian Code does not require the "substantial step" element required under U.S. law. DI 20-3 at 21.

further stated that when it "reaches a conflicting conclusion on admissibility[,]" it communicates with the State Department "to resolve any areas of disagreement with respect to inadmissibility." *Id.* However, USCIS noted, if the State Department stands by its inadmissibility determination, then USCIS will adjudicate the waiver application per the governing law and regulations because USCIS lacks authority to issue overseas visas. *Id.* As for why it denied Mr. Ferko a waiver, USCIS explained that it reviewed Mr. Ferko's arguments, as well as the LegalNet opinion "and found the DoS LegalNet opinion to be sound in all respects." *Id.* USCIS reasoned that his attempted murder conviction was a categorical match for attempted murder under U.S. law because the Albanian Code's requirement of "a direct action toward carrying out willful murder" comports with the requirement under U.S. law of "a 'substantial step' toward the commission of the underlying offense." *Id.* Thus, USCIS concluded Mr. Ferko was inadmissible for a waiver under section 212(h)(2) of the INA. *Id.* Additionally, it found that Mr. Ferko's arguments that his convictions were for purely political offenses were unsupported by the record or legal precedent and elaborated that an individual's mere membership in a political minority is insufficient to establish that his conviction was for a purely political offense. *Id.*

**C.    Instant federal civil matter**

One day after he sought reconsideration of USCIS's decision, Mr. Ferko filed a complaint before us, in which he challenged USCIS's inadmissibility determination. DI 1. Following USCIS's denial of his reconsideration motion, Mr. Ferko filed an amended complaint (DI 8), which is the operative complaint. He seeks review, under § 706(2) of the APA, of USCIS's "decision to deny his request for review of inadmissibility[,]" as well as declaratory relief under the DJA on the admissibility issue. DI 8 at ¶¶ 22, 26. Mr. Ferko asks us to (1)

accept jurisdiction and review USCIS's inadmissibility determination; (2) vacate and reverse

USCIS's inadmissibility determination; and (3) declare that Mr. Ferko is not inadmissible under

either § 1182(a)(2)(i)(I) or § 1182(a)(2)(B) of the INA.[7]  *Id.* at 10-11.

Following defendants' motion to dismiss (DI 10) and the parties' responsive briefing (DI

11, 13), we held oral argument on the motion on September 17, 2025 (DI 15).  Because the

parties disagreed about whether a pure question of law was at issue in this case, and because we

concluded that the record before us did not enable resolution of the dispute at that stage, we

denied defendants' motion to dismiss without prejudice to refiling or re-raising such a motion as

part of its merits briefing.  DI 16 at ¶ 4.  Subsequently, defendants filed the motions now before

us.  DI 20, 21.

## II.    MOTIONS AT ISSUE

## A.    Motion to dismiss

Defendants again seek to dismiss this case.  DI 20.  They argue dismissal is warranted

under Federal Rule of Civil Procedure 12(b)(1) because plaintiffs request an advisory opinion,

given that (1) the INA bars judicial review of claims related to the denial of Mr. Ferko's

inadmissibility waiver application, such that review under the APA also is precluded; and (2) we

---

[7] Consistent with his prior arguments in the administrative proceedings below, Mr. Ferko asserts he is not inadmissible under either INA section because: (1) his convictions for "insulting another person because of service" and "falling asleep while on guard duty" do not constitute crimes for immigration purposes; (2) his attempted murder conviction under the Albanian Code is not a categorical match for attempted murder under U.S. law because it does not require a "substantial step[,]" so this crime cannot constitute a CIMT; (3) his Albanian convictions are not convictions for U.S. immigration purposes because they were not rendered under a judicial system that comports with due process of law; and (4) his Albanian convictions were for "purely political offenses" given the stated purpose and operation of the Albanian Code.  DI 8 at 10-11 (citation modified).

lack the authority to find Mr. Ferko eligible for a waiver, grant him that waiver, or issue him a visa. *Id.* at 5-6, 8, 11-12. Thus, defendants urge that any threshold determination by us that Mr. Ferko was not inadmissible based on his Albanian convictions would not afford Mr. Ferko meaningful relief. *Id.* at 12-14.

Plaintiffs oppose defendants' motion. DI 25. First, they insist that we have jurisdiction to review USCIS's inadmissibility determination under 28 U.S.C. § 1331 and the APA, notwithstanding 8 U.S.C. § 1252(a)(2)(B)(i). *Id.* at 7. Plaintiffs assert that their grievance is with USCIS's misapplication of the inadmissibility statute and violation of its procedures — not with its decision to deny Mr. Ferko's waiver application. *Id.* at 9. The resolution of such questions, they aver, requires only a permissible review of USCIS's interpretation and application of sections 1182(a)(2)(A)(i)(I) and (a)(2)(B) and the procedures it used to adjudicate Mr. Ferko's admissibility. *Id.* at 9-10. Second, plaintiffs maintain that meaningful relief is available — noting that our determination that he is not inadmissible would put him in a very similar position to the one he would be in if USCIS had reversed the consulate's inadmissibility determination and found him not inadmissible: he would still have the opportunity to return to the consulate to request a visa issuance. *Id.* at 17.

## B.      Motions for summary judgment

The parties filed cross-motions for summary judgment. DI 20, 21. Importantly, the parties agree that there are no genuine disputes of material fact. DI 20 at 6-7, 7 n.1; DI 21 at 5, 16; DI 24 at 3, 6.

Defendants argue that if we find we have jurisdiction to evaluate whether Mr. Ferko needed a waiver and accordingly deny their motion to dismiss, then we should grant summary

judgment in their favor.  DI 20 at 6-7.  They assert that summary judgment is warranted because attempted murder under Albanian law is a categorical match for attempted murder under U.S. law, such that Mr. Ferko is statutorily inadmissible.  *Id.* at 6-8.  In defendants' view, the requirement under Albanian law that the action be directed toward committing the underlying crime comports with the requirement under U.S. law that the action constituted a substantial step toward committing the underlying crime.  *Id.* at 15-17.  Defendants also fault plaintiffs for failing to provide evidence to USCIS supporting their claim that the Albanian statute was overbroad.  *Id.* at 16.  And even if we determine that there is no categorical match, defendants ask us to remand to USCIS for reconsideration of his waiver application based on his "breach of the regulation of guard" offense rather than to determine, ourselves, whether that constitutes a basis for inadmissibility.  DI 24 at 3.  As for plaintiffs' argument that Mr. Ferko's convictions were for purely political offenses, defendants (1) assert this question would necessarily (and impermissibly) require us to examine and reweigh facts; (2) maintain that attempted murder is clearly a CIMT, rather than a political offense; and (3) reject plaintiffs' attempt to disqualify all convictions under the Albanian Code as political.  DI 24 at 2-6.

In contrast, plaintiffs argue — as a pure matter of law — that USCIS erred when it stated in its January 2025 decision that the State Department "makes the inadmissibility determination and USCIS's role is simply to adjudicate waiver applications according to the applicable statutory provisions" because this contradicts USCIS's own policy manual requiring it to verify the applicant's inadmissibility, such that USCIS violated the APA and Mr. Ferko's constitutional rights.  DI 21 at 8-9 (citations omitted).  Plaintiffs also assert that USCIS committed purely legal error — in violation of the APA — when, in its April 2025 decision denying Mr. Ferko's

11

reconsideration motion, USCIS (1) concluded that attempted murder under Albanian law was a categorical match for attempted murder under U.S. law; (2) rejected his argument that he was convicted for "purely political offenses"; and (3) failed to address his argument that he did not have convictions for INA purposes because his convictions were not rendered by an impartial and fair tribunal. *Id.* at 9-10. Plaintiffs urge us to find that (1) Mr. Ferko's three offenses constituted "purely political offense[s]" for immigration law purposes; (2) attempted murder under Albanian law is not a categorical match for attempted murder under U.S. law because an action that has "the direct action" of committing the underlying offense is distinct from an action that constitutes a "substantial step" toward the crime's commission;[8] (3) his Albanian offenses of "insulting a person because of his state or social activity" and "violat[ing] [ ] the rules of guard duty" do not constitute crimes under U.S. law; and (4) his "Declaration of Guilt" for the Albanian offenses did not constitute a conviction for those offenses under the INA because it was not rendered by an impartial, independent, and fair tribunal, nor did it include core procedural safeguards. *Id.* at 16-32.

## III. LEGAL STANDARDS

### A. Dismissal under Rule 12(b)(1)

A defendant may move for dismissal by bringing a Rule 12(b)(1) motion, which challenges the court's subject matter jurisdiction — or, in other words, the court's power to hear the claims before it. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is non-waivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). The plaintiff bears the burden of establishing

---

[8] To the extent there is any ambiguity regarding the definition of "attempt" under the Albanian Code, plaintiffs contend that the rule of lenity counsels in favor of their position because Mr. Ferko is the accused. DI 25 at 20.

jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and the court must dismiss the action if it determines subject matter jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3).  Federal district courts have original jurisdiction of all civil matters "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

**B.      Summary judgment**

We should grant summary judgment when the movant demonstrates "that there is no genuine dispute as to any material fact" such that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact."  *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021) (citation omitted).  When evaluating a summary judgment motion, we must "view the record and draw inferences in a light most favorable to the non-moving party."  *In re IKON Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002) (citation omitted).  We also must assess whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**C.      Judicial review of immigration matters**

When an administrative agency interprets a statute, there is a strong presumption in favor of judicial reviewability of that interpretation.  *Kucana v. Holder*, 558 U.S. 233, 251-52 (2010); *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020).  This well-settled presumption may only be rebutted by clear and convincing evidence.  *Kucana*, 558 U.S. at 251-52.  Courts consistently apply this presumption of reviewability to agency interpretations of U.S. immigration law. *Guerrero-Lasprilla*, 589 U.S. at 229.

And though the Executive Branch exercises significant control in the sphere of immigration, the judiciary nonetheless play an important role when it comes to reviewing agency

13

interpretations of U.S. immigration law — a role that comports, rather than conflicts, with the separation of powers doctrine.  "In designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence." *United States v. Nixon*, 418 U.S. 683, 707 (1974), *superseded by statute on other grounds*, *Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987).  "[W]hile the Constitution diffuses power the better to secure liberty, it also contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).  Indeed, the "separation of powers does not mean that the three branches ought to have no partial agency in, or no control over the acts of each other" but rather it means "that where the whole power of one department is exercised by the same hands which possess the whole power of another department, the fundamental principles of a free constitution are subverted." *Ameron, Inc. v. United States Army Corps of Engineers*, 809 F.2d 979, 998 (3d Cir. 1986) (citation modified) (citation omitted).

**i.    Administrative Procedures Act**

One core statutory basis for judicial review of agency action, including agency action involving immigration, is the APA.  5 U.S.C. § 551 et seq.  This statute "establishes a basic presumption of judicial review for one suffering legal wrong because of agency action" which "can be rebutted by a showing that the relevant statute precludes review, § 701(a)(1), or that the agency action is committed to agency discretion by law, § 701(a)(2)." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16-17 (2020) (citation modified) (citation omitted).  We

should only "restrict access to judicial review" if there is "a showing of 'clear and convincing evidence' of a contrary legislative intent" — in other words, preclusion of judicial review requires an unequivocal showing that Congress intended to preclude review of that matter. *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 141 (1967) (citation omitted).  The APA's provision excluding from review actions "committed to agency discretion" is read narrowly and is restricted "to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion."  *Dep't of Com. v. New York*, 588 U.S. 752, 772 (2019) (citation omitted).

Section 706(2)(A) of the APA instructs us to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Typically, an agency action is arbitrary and capricious if, in executing that action, the agency (1) relied on factors Congress did not intend for it to consider; (2) wholly failed to evaluate an important part of the issue; or (3) provided an explanation for its action that (a) contradicts the evidence before it or (b) is implausible enough that it could not be attributed to agency expertise or a difference in perspective.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  We must not provide "a reasoned basis for the agency's action that the agency itself has not given[]" but we will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  *Id.* (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("*Chenery II*"); *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).  And though we must not set aside an agency action that "rests upon . . . an exercise of judgment in an area which Congress has entrusted to the agency" simply because we might have exercised our judgment differently,

15

we must strike down an agency action if that "action is based upon a determination of law as to which the reviewing authority of the courts does come into play" and "the agency [] misconceived the law." *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("*Chenery I*"). Moreover, the grounds for the agency's action must "be clearly disclosed and adequately sustained." *Id.*

### ii.    Immigration and Nationality Act

Section 212 of the INA prescribes the grounds upon which an individual may be deemed inadmissible, rendering him ineligible to adjust his immigration status, obtain a visa, or gain admission into the United States. 8 U.S.C. § 1182. Among various other grounds for inadmissibility, and subject to certain exceptions, an individual is inadmissible if he is "convicted of" or admits to committing "a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime." 8 U.S.C. § 1182(a)(2)(A)(i)(I). Additionally, an individual is inadmissible if he has been convicted of two or more offenses, excluding purely political offenses, for which the aggregate sentences of confinement were at least five years — regardless of whether the convictions resulted from a single trial or scheme or involved moral turpitude. § 1182(a)(2)(B). Section 212(h) authorizes the Attorney General to waive the application of these inadmissibility grounds "in [her] discretion[,]" subject to certain limitations. 8 U.S.C. § 1182(h). However, this section precludes the Attorney General from providing an inadmissibility waiver to a noncitizen who, among other grounds, "has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act

16

involving torture." *Id.*[9]

Section 212(h) of the INA states that "[n]o court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection." *Id.*  8 U.S.C. § 1252(a)(2)(B)(i)-(ii) likewise strips us of jurisdiction to review "any judgment regarding the granting of relief under section 1182(h)" or " any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." *Id.*  This provision "expressly strips" federal courts of jurisdiction to review § 1182(h) waiver determinations, regardless of whether that determination occurred during removal proceedings. *Berlus v. Napolitano*, 502 Fed. Appx. 206, 209 (3d Cir. 2012) (citation omitted).[10]  However, while we lack jurisdiction to review the facts found during discretionary relief proceedings, *Patel v. Garland*, 596 U.S. 328, 347 (2022) (citing 8 U.S.C. § 1252(a)(2)(B)(i)), we may review

---

[9] 8 C.F.R. § 212.7(d) likewise provides that "[t]he Attorney General, in general, will not favorably exercise discretion under section 212(h)(2) of the Act (8 U.S.C. 1182(h)(2)) to consent to an application or reapplication for a visa, or admission to the United States, or adjustment of status, with respect to immigrant aliens who are inadmissible under section 212(a)(2) of the Act in cases involving violent or dangerous crimes, except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of the application for adjustment of status or an immigrant visa or admission as an immigrant would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act." *Id.*

[10] In *Berlus*, the petitioner challenged USCIS's denial of his request for an inadmissibility waiver and argued "that the administrative proceedings in which his waiver of inadmissibility request was denied did not comport with constitutional due process requirements[,]" such that both the district court and Third Circuit Court of Appeals had jurisdiction to hear his claim. *Id.* at 208.

17

"constitutional or purely legal claims regarding § 1182." *Berlus*, 502 Fed. Appx. at 208 n.8

(citation omitted). For example, a petitioner "challenging the determination that he is statutorily

inadmissible for attempting to procure admission through fraud" raises a purely legal question

that is not foreclosed by section 1252(a)(2)(B). *United States ex rel. Vaso v. Chertoff*, 369 Fed.

Appx. 395, 401 (3d Cir. 2010); *see also Byrne v. Beers*, 2014 WL 2742800, *4-*5 (E.D. Pa. June

17, 2014), *aff'd by* 618 Fed. Appx. 143 (3d Cir. 2015) (concluding at summary judgment that

USCIS's determination regarding plaintiff's inadmissibility based on marijuana offenses did not

violate the APA). So, too, is the question of a noncitizen's "eligibility for adjustment of

status . . . a purely legal question [ ] [that] does not implicate agency discretion." *Pinho v.

Gonzales*, 432 F.3d 193, 204 (3d Cir. 2005).[11]

The visa adjudication and waiver process involves both the Department of State (through

its consular officers) and the Department of Homeland Security (through USCIS). Only United

States consular officers are authorized to grant visas. 8 U.S.C. § 1201(a). Under the judicially

created consular nonreviewability doctrine, the consular officer's decision to grant or deny a visa

---

[11] In *Pinho*, the Third Circuit assessed, as "a legal question, not [ ] committed to agency discretion" the question of "whether under the applicable statutory language as interpreted by the [Board of Immigration Appeals] BIA, Pinho was 'convicted' so as to render him ineligible for adjustment of status." *Pinho*, 432 F.3d at 204.

Other examples of questions of law include, but are not limited to: (1) whether a specific conviction constitutes an aggravated felony as defined under the INA; and (2) the BIA's interpretation of a noncitizen's eligibility for a waiver under section 212(h). *See, e.g.*, *Martinez v. Mukasey*, 519 F.3d 532, 538 (5th Cir. 2008) (assessing, prior to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), whether the noncitizen's bank fraud conviction constituted an aggravated felony as defined by INA section 101(a)(43) and reviewing the BIA's interpretation of the noncitizen's eligibility for a section 212(h) waiver); *James v. Gonzales*, 464 F.3d 505, 507 (5th Cir. 2006) (explaining the court "retain[ed] jurisdiction to examine and decide the jurisdictional question, limited to whether the charged crime constitute[d] an aggravated felony.").

is not judicially reviewable. *Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972) ("[W]hen the

Executive exercises this power negatively on the basis of a facially legitimate and bona

fide reason, the courts will neither look behind the exercise of that discretion nor test it[.]");

*Onuchukwu v. Clinton*, 408 Fed. Appx. 558, 560 (3d Cir. 2010) (concluding that the district court

properly found it could not review the consular officer's decision to deny the plaintiff a visa

based on the consular nonreviewability doctrine); *Moreira v. Cissna*, 442 F. Supp. 3d 850, 855

(E.D. Pa. 2020) (citing *Kerry v. Din*, 576 U.S. 86 (2015) (explaining courts cannot "'look

behind' the consular officer's decision by reviewing whether the consular officer misconstrued

the statutes in reaching his decision")).  If a noncitizen is found inadmissible by the consular

officer, the noncitizen can apply for an inadmissibility waiver from USCIS, which USCIS may

issue pursuant to the Attorney General's authority under 8 U.S.C. § 1182(h).  8 C.F.R.

§ 212.7(a)(1).  As prescribed in USCIS's policy manual, prior to adjudicating any waiver, the

USCIS officer "must verify that the applicant is inadmissible."  USCIS Policy Manual, Vol. 9,

Part A, Ch. 3A.  In doing so, she is required to "identify all inadmissibility grounds that apply,

even if an immigration judge, a consular officer, Customs and Border Protection (CBP) officer,

or a different USCIS officer made a prior inadmissibility determination."  *Id.*  If USCIS denies a

waiver application, it "will provide a written decision" that must explain "the specific reasons for

denial[,]" notify the applicant and his representative, and advise him of the appeal process.  8

C.F.R. §§ 103.3(a),[12] 212.7(a)(3).

---

[12] 8 C.F.R. § 103.3(a) applies to the denial of a USCIS officer of "an application or petition filed under section 103.2[.]"  *Id.*  Section 103.2 applies to benefits requests, 8 C.F.R. § 103.2, which encompasses an application for a waiver of inadmissibility related to an immigration benefit.  *See* USCIS Policy Manual, Vol. 8, Part G, Ch. 8.

When a court reviews a question of law — such as whether an individual is statutorily inadmissible under the INA due to a criminal conviction — it applies the categorical approach. *See, e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (explaining that the "categorical approach has a long pedigree in our Nation's immigration law") (citation omitted). Under this approach, we compare the statutory elements of the conviction (*i.e.*, attempted murder under Albanian law) to the statutory elements of the offense that renders the individual inadmissible (*i.e.*, attempted murder under U.S. law, which constitutes a crime of moral turpitude under the INA). *See Taylor v. United States*, 495 U.S. 575, 602 (1990) (using the categorical approach to determine whether the defendant's second-degree burglary conviction under Missouri law constituted a "burglary" conviction for purposes of the sentencing enhancement under 18 U.S.C. § 924(e)). In doing so, we must not examine "the facts underlying the prior convictions[,]" and instead only focus on the statutory definition and elements of that conviction. *Id.* at 600; *Mathis v. United States*, 579 U.S. 500, 504 (2016) (citation omitted). The elements of a criminal offense are "the things the prosecution must prove to sustain a conviction" — if at trial, the jury must find these things satisfied beyond a reasonable doubt to convict the defendant, while if at a plea hearing, the defendant must admit these things when he pleads guilty. *Mathis*, 579 U.S. at 504 (citation modified) (citations omitted). In contrast, facts are "real-world things—extraneous to the crime's legal requirements" that need not "be found by a jury nor admitted by a defendant." *Id.* (citations omitted). Essentially, we line up the crime of conviction's elements next to the generic offense's elements (for example, we would compare the elements of attempted murder under Albanian law to the elements of attempted murder under U.S. law) to see if there is a match. *See id*, 579 U.S. at 504-05. If the Albanian offense sweeps more broadly (*i.e.*, covers

more conduct) than attempted murder under U.S. law, then there is not a categorical match, and the Albanian offense cannot be used as a predicate offense for a crime of moral turpitude based upon attempted murder. *See id*. at 504. However, if the elements of the Albanian offense are the same as, or narrower than, the elements of attempted murder under U.S. law, then the Albanian offense can count as such a predicate offense. *Id*. We examine "the minimum conduct criminalized by the [foreign] statute" and determine whether there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Moncrieffe*, 569 U.S. at 191 (citation omitted).

D.    **Declaratory Judgment Act**

Under the Declaratory Judgment Act, we may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" — subject to certain exceptions — "[i]n a case of actual controversy" within our jurisdiction. 28 U.S.C. § 2201(a). The Declaratory Judgment Act does not provide "an independent basis for federal jurisdiction" over a case or controversy, but it rather offers a remedy for matters otherwise properly within our subject matter jurisdiction. *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950)). Thus, before assessing relief under the Declaratory Judgment Act, we first must determine whether we have independent subject matter jurisdiction over the controversy. *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351-52 (3d Cir. 1986). And even if we have subject matter jurisdiction over a given matter, we maintain discretion over whether to entertain it under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 286 (1995) ("Since its inception, the Declaratory Judgment Act has

21

been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

## IV.    DISCUSSION

### A.    We have subject matter jurisdiction to review USCIS's inadmissibility determination and therefore deny defendants' motion to dismiss on this ground

We agree with plaintiffs that we have subject matter jurisdiction to address plaintiff's challenge to USCIS's inadmissibility determination under 28 U.S.C. § 1331 (arising under jurisdiction) and 5 U.S.C. § 706(2)(A) (the APA).  Plaintiffs dispute USCIS's interpretation of the INA's inadmissibility provisions, specifically sections 1182(a)(2)(A)(i)(I) and (a)(2)(B).  Such a claim arises under U.S. law — here, the INA and the APA.  And we operate under a strong presumption of judicial reviewability when an agency interprets a statute (including immigration statutes), a presumption that only may be rebutted by clear and convincing evidence that Congress intended to preclude such review.  *Guerrero-Lasprilla*, 589 U.S. at 229; *Kucana*, 558 U.S. at 251-52.  Moreover, because plaintiffs do not challenge USCIS's decision to grant Mr. Ferko relief (*i.e.*, an inadmissibility waiver), neither 8 U.S.C. § 1252(a)(2)(B)(i)-(ii) (which preclude our review of § 1182(h) waiver determinations) nor 5 U.S.C. § 701 (which precludes our review when such review is barred by statute or when "agency action is committed to agency discretion by law") apply.  Plaintiffs' challenge to USCIS's inadmissibility determination presents a purely legal, and thus judicially reviewable, question.  *See Patel*, 596 U.S. at 347; *see also Pinho*, 432 F.3d at 204; *Chertoff*, 369 Fed. Appx. at 401; *Byrne*, 2014 WL 2742800 at *4-*5; *Martinez*, 519 F.3d at 538; *James*, 464 F.3d at 507.  Indeed, the APA seemingly implores us to review USCIS's inadmissibility determination to ensure that it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" — 5 U.S.C. § 706(2)(A) — an

22

inquiry that essentially asks whether "the agency [ ] misconceived the law." *Chenery I*, 318 U.S. at 94. In our view, we can and must review this question and provide an answer. And, because we have this independent basis for subject matter jurisdiction, we also may grant relief under the Declaratory Judgment Act. *Auto-Owners*, 835 F.3d at 394. Defendants' motion to dismiss based on subject matter jurisdiction is denied.

**B.      This case presents a concrete controversy for which relief is available to Mr. Ferko, so we deny defendants' motion to dismiss on this ground**

This is not an advisory opinion in which we are "advising what the law would be upon a hypothetical state of facts." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citation omitted). Rather, the parties present "a real and substantial controversy" — whether Mr. Ferko is statutorily inadmissible (and ineligible for an inadmissibility waiver) under the INA due to his Albanian convictions. *Id.* (citation omitted). Both the State Department and USCIS have found Mr. Ferko inadmissible due to these convictions and denied him an inadmissibility waiver and visa on these grounds. And our resolution of this question enables "specific relief through a decree of a conclusive character"[13] in the form of a remand to USCIS, which may result in (1) a re-determination of Mr. Ferko's admissibility and eligibility for a waiver by USCIS; (2) the issuance of such a waiver by USCIS; (3) a re-determination of Mr. Ferko's admissibility by the State Department; and (4) the issuance of a visa by the State Department.

How? If we determine that USCIS's legal basis for finding him inadmissible under the INA was wrong, as a matter of law, then the remedy is to remand to USCIS to re-adjudicate his application for an inadmissibility waiver. In that scenario, USCIS could not rely upon Mr.

---

[13] *Id.*

Ferko's convictions to find him inadmissible such that, if there are otherwise no valid bases for finding him inadmissible, Mr. Ferko would not require an inadmissibility waiver. Or, if we determine that USCIS erred as a matter of law in finding Mr. Ferko ineligible for a waiver under § 1182(h) (due to his attempted murder conviction), then USCIS could no longer find Mr. Ferko ineligible for a waiver on this basis. As the parties acknowledged at oral argument, the next step then would be for Mr. Ferko to return to the consulate and request a visa. And even though Mr. Ferko is not guaranteed to get a visa upon his return to the consulate — because the consular officer could still decide to deny him a visa, and we would be unable to review that denial if free of legal error[14] — Mr. Ferko's ultimate success in obtaining a visa is not the measure of whether relief to him is available. Relief is available even if it is not certain. An appellate court's opinion vacating and remanding a district court decision, because the reason relied upon by the district court was erroneous, is not "an advisory opinion" even though the lower court could find a different, valid reason to reach the same ruling. Nor is a judgment entered against a judgment-proof defendant an "advisory" judgment. Parties are entitled to decisions under the correct law, and such circumstances are intrinsic to our legal system, not indicators of an advisory opinion.

And Mr. Ferko makes a persuasive argument in the specific context of the visa system. If we found that no relief was available to him, then the interplay between the State Department's consulate offices and USCIS would make no sense. USCIS conducts its own independent assessment of an applicant's admissibility, prior to determining whether to grant him an inadmissibility waiver. USCIS Policy Manual, Vol. 9, Part A, Ch. 3A. This assessment must serve some function, even if the State Department ultimately can decide to ignore USCIS's

---

[14] *Kleindienst*, 408 U.S. at 770; *Onuchukwu*, 408 Fed. Appx. at 560.

inadmissibility determination or decision to grant a waiver.  And this design necessarily involves the same risk of uncertain relief, as USCIS could grant the applicant a waiver but the State Department still could deny him a visa, and we would be unable to review that visa decision. Mr. Ferko would be in the same situation here if (1) we told USCIS that it could not find Mr. Ferko inadmissible (or ineligible for a waiver) on the grounds that it outlined in its determination below, (2) USCIS then found him admissible (or issued him a waiver), and (3) Mr. Ferko went to the State Department seeking a visa, only to be denied that visa.  In either situation, we cannot review the State Department's ultimate decision to deny him a visa or USCIS's ultimate decision to grant or deny him a waiver.  But by deciding that USCIS cannot legally find Mr. Ferko inadmissible (or ineligible for a waiver) on certain grounds, Mr. Ferko has the chance to obtain relief through a remand to USCIS and possible re-try with the State Department.  Because this is not an advisory opinion, we deny defendants' motion to dismiss on this ground.

**C.    USCIS remedied any procedural issues respecting its adjudication of Mr. Ferko's waiver application upon reconsidering its decision to deny him a waiver, so its adjudication was not arbitrary and capricious and we deny summary judgment to plaintiffs on this ground**

Before jumping into the inadmissibility questions, we will briefly address plaintiffs' argument that USCIS violated its own policies and procedures in its adjudication of Mr. Ferko's waiver application.  In plaintiffs' view, USCIS committed legal error when it stated in its January 2025 decision denying his waiver application that USCIS's "role is simply to adjudicate waiver applications according to the applicable statutory provisions" — essentially leaving the inadmissibility determination to the State Department.  DI 21 at 8-9.  Plaintiffs explain that USCIS's policy manual requires USCIS to verify the applicant's inadmissibility.  *Id.*  USCIS's policy manual indeed requires it to "verify that the applicant is inadmissible" and "identify all

25

inadmissibility grounds that apply" irrespective of the consular officer's prior inadmissibility determination when reviewing a waiver application.  USCIS Policy Manual, Vol. 9, Part A, Ch. 3A.  And USCIS did not appear to fulfill this duty to independently assess Mr. Ferko's inadmissibility upon its initial review of his waiver application.  DI 20-4 at 2.  However, USCIS did fulfill this obligation upon reconsidering (and ultimately denying) Mr. Ferko's waiver application, as evidenced by its April 2025 decision, in which USCIS (1) explained that it independently determines applicants' admissibility based on the record; and (2) described its bases for finding Mr. Ferko inadmissible: that he was inadmissible (and ineligible for a waiver) due to his attempted murder conviction.  DI 20-3 at 5.  Thus, when viewed in its entirety, we conclude that USCIS substantially fulfilled its visa-related obligations upon adjudicating Mr. Ferko's waiver application.  As such, we do not find that USCIS acted arbitrarily and capriciously, as it did not fail "to follow [its] own procedures" in a manner that affected individuals' rights.  *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (in the context of an internal BIA manual, explaining that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. . . . even where the internal procedures are possibly more rigorous than otherwise would be required.") (citation omitted).  We therefore deny summary judgment to plaintiffs on this issue.

**D.     Pursuant to the Declaratory Judgment Act, we declare that Mr. Ferko is not inadmissible under 8 U.S.C. § 212(a)(2)(A)(i)(I), nor is he statutorily ineligible for an inadmissibility waiver under 8 U.S.C. § 1182(h), because attempted murder under Albanian law is not a categorical match for attempted murder under U.S. law**

We begin with USCIS's first basis for finding Mr. Ferko inadmissible: that his attempted murder conviction under the Albanian Code constituted a CIMT that was "not a purely political offense[,]" rendering him inadmissible under section 212(a)(2)(A)(i)(I) of the INA.  DI 20-4 at 1.

26

Applying the categorical approach,[15] we find that the elements of attempted murder under the Albanian Code encompass a broader range of conduct compared to the elements of attempted murder under U.S. law.  We therefore hold that attempted murder under the Albanian Code (effective as of 1985) is not a categorical match for attempted murder under U.S. law, so Mr. Ferko's attempted murder offense cannot serve as the basis for a CIMT under section 212(a)(2)(A)(i)(I) of the INA.  Here's why.

Let us first assume that attempted murder under U.S. law constitutes a CIMT for purposes of the INA.  Though the INA does not define "moral turpitude[,]" the BIA and the Third Circuit have interpreted it as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general."  *Mahn v. AG of the United States*, 767 F.3d 170, 174 (3d Cir. 2014) (citation omitted).  BIA precedent[16] and Third Circuit dicta supports this conclusion.[17]  Attempted murder is codified at 18 U.S.C. § 1113.  But this section does not define the elements of attempted

---

[15] *See Moncrieffe*, 569 U.S. at 191; *Taylor*, 495 U.S. at 600, 602; *Mathis*, 579 U.S. at 504-05.

[16] *See Matter of Awaijane*, 14 I. & N. Dec. 117 (BIA 1972) (concluding that petitioner's attempted murder conviction under Lebanese law constituted a CIMT) (citation omitted).

[17] *See, e.g.*, *Caroleo v. Gonazales*, 476 F.3d 158, 164-66 (3d Cir. 2007), *abrogated on other grounds by Judulang v. Holder*, 565 U.S. 42, 52 n.6 (2011) (acknowledging that "attempted murder can be characterized as a crime involving moral turpitude for the purposes of determining removability" under the INA but explaining it was irrelevant whether that conviction could have constituted a CIMT in that case due to the government's categorization of the offense as a "crime of violence" for removal purposes).

murder, so we look to the common law[18] and the Model Penal Code (MPC)[19] to define this offense.

Attempted murder at common law and under the MPC requires two elements: (1) a specific intent to kill; and (2) a substantial step toward the commission of that crime. *Braxton*, 500 U.S. at 349, 351 (explaining that both the specific intent to kill and a substantial step toward committing the killing were required for attempted murder under 18 U.S.C. § 1114); *United States v. Resendiz-Ponce*, 549 U.S. 102, 106-07 (2007) (describing the elements of an attempt to commit a crime at common law); Model Penal Code § 5.01 (defining "criminal attempt"). Adopting the MPC's framework for attempt, the Third Circuit defines "substantial step" as an act that "strongly corroborat[es] the firmness of a defendant's criminal purpose." *Martinez v. AG*, 906 F.3d 281, 284 (3d Cir. 2018) (citation omitted); *see also* Model Penal Code § 5.01(2) (defining "substantial step" as an act which is "strongly corroborative of the actor's criminal purpose."). And the MPC provides several examples of conduct that "shall not be held insufficient as a matter of law" if it is "strongly corroborative of the actor's criminal purpose."[20]

---

[18] *Braxton v. United States*, 500 U.S. 344, 351 (1991) (explaining that we utilize the common law elements for attempt because the statute did not articulate the elements of "attempt to kill") (citation omitted).

[19] *United States v. Hsu*, 155 F.3d 189, 202 n.19 (3d Cir. 1998) (adopting the MPC's test for attempt).

[20] These include: "(a) lying in wait, searching for or following the contemplated victim of the crime; (b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission; (c) reconnoitering the place contemplated for the commission of the crime; (d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed; (e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances; (f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for

Article 11 of the Albanian Code in effect in 1985, titled "Preparation and Attempt[,]" defined "attempt" as "an action that had the direct aim of the commission of the criminal offense." DI 20-3 at 22 (citing Article 11 of the Albanian Code); DI 21 at 42 (same). It defined "preparation" as "the creation of the conditions for committing a crime." DI 21 at 42 (citing Article 11 of the Albanian Code). Given these distinct definitions, we surmise that "attempt" and "preparation" were distinct concepts under the Albanian Code, such that conduct that constituted mere criminal "preparation" did not constitute criminal "attempt." In that way, attempt under the Albanian Code comports with attempt under U.S. law. *Swift & Co. v. United States*, 196 U.S. 375, 402 (1905) (explaining that "[t]he distinction between mere preparation and attempt is well known in the criminal law.") (citation omitted). However, as illustrated above, there is a bit more to the concept of a substantial step under U.S. law when compared to the Albanian Code's concept. The Albanian Code's definition of attempt does not require that the defendant's action "strongly corroborat[es] the firmness of [his] criminal purpose" — which is required to constitute a substantial step under U.S. law. *Martinez*, 906 F.3d at 284; Model Penal Code § 5.01(2). Rather, a defendant's act will rise to the level of attempt so long as it "had the direct aim of the commission of the criminal offense" — regardless of whether that act strongly corroborated his criminal purpose to achieve the underlying offense. DI 20-3 at 22 (citing Article 11 of the Albanian Code); DI 21 at 42 (same). In other words, attempt under the Albanian Code, effective in 1985, swept in more conduct than attempt under U.S. law, so these

---

its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; [and] (g) soliciting an innocent agent to engage in conduct constituting an element of the crime." Model Penal Code § 5.01(2).

29

offenses are not a categorical match.

To illustrate the point, imagine Tony decides to murder Ralph.  A good planner, Tony stops by the garden center to buy a shovel, intending to use it to bury Ralph's body.  He gets arrested in the parking lot, and one of his compatriots will testify that Tony had been planning to "take care of Ralph tonight."  Under the relevant Albanian law, the purchase — done with the direct aim of completing the killing — plausibly constitutes attempt, because Tony bought it as part of the plan to commit the offense.  But under U.S. law, buying a shovel is facially innocent.  After all, Tony is known for his immaculately landscaped back yard.  Buying a shovel does little to nothing to strongly corroborate the firmness of a murderous purpose.

Because attempted murder under the Albanian Code (effective as of 1985)[21] is not a categorical match for attempted murder under U.S. law, we hold that this offense does not render Mr. Ferko inadmissible under section 212(a)(2)(A)(i)(I) nor ineligible for an inadmissibility waiver under § 1182(h).  Summary judgment in plaintiffs' favor is granted on this ground.

**E.    We lack jurisdiction to determine whether Mr. Ferko is inadmissible under section 212(a)(2)(B) and whether Mr. Ferko's "Declaration of Guilt" constitutes a "conviction" under section 101(a)(48)(A) of the INA because these inquiries entail mixed questions of law and fact, so we deny plaintiffs' motion for summary judgment on these grounds[22]**

---

[21] The Albanian Code, now called the Criminal Code of the Republic of Albania, was modified and enacted in 1995.  *See* Criminal Code of the Republic of Albania (approved by Law No. 7895/1995 of January 27, 1995, and amended up to Law No. 146/2020 of December 17, 2020), Albania, WIPO, available at: https://perma.cc/42GT-VZDN.  Our conclusion in this case pertains only to the Albanian Code effective in 1985, when Mr. Ferko was convicted.

[22] As a preliminary matter, the government does not argue that Mr. Ferko is inadmissible under section 212(a)(2)(B) because he was convicted of two or more offenses for which he received an aggregate sentence of confinement of at least five years.  *See* DI 20 at 13-17 (arguing for dismissal because we lack jurisdiction to review the inadmissibility determination or, alternatively, for summary judgment because Mr. Ferko is inadmissible under section 212(a)(2)(A)(i)(I)).  Only plaintiffs assert that Mr. Ferko is not inadmissible under section 212(a)(2)(B).  *See* DI 21 at 13, 26-27.  But in response to plaintiffs' arguments, the government avers that the determination of whether a conviction is "political" is necessarily fact-based and

The next question is whether Mr. Ferko's convictions for attempted murder and violating "the rules of guard duty by a solider" constitute convictions for non-purely political offenses under section 212(a)(2)(B), rendering him inadmissible under that provision.[23]  Because this question is a mixed question of law and fact, we conclude that we lack jurisdiction to answer it.

Recall that federal district courts solely have jurisdiction to review "constitutional or purely legal claims regarding § 1182" — we do not have jurisdiction to review factual questions. *Berlus*, 502 Fed. Appx. at 208 n.8; *Patel*, 596 U.S. at 347.  A mixed question of law and fact — like the question of whether an offense is "purely political" under sections 212(a)(2)(A)(i)(I) or (a)(2)(B) — is not a purely legal question, so we lack jurisdiction to answer it.  Because we know of no cases directly on point, we reach this conclusion based on how federal courts treat questions regarding political offenses in other parts of immigration and international law and the definition of "purely political offense" in the federal regulations.

---

thus beyond our jurisdiction.  DI 24 at 4.

[23] As a matter of law, Mr. Ferko's conviction for "insulting a person because of his state or social activity" (also referred to as "insults due to duty committed openly") clearly does not qualify as a conviction under the INA.  DI 20-3 at 21.  The First Amendment permits "restrictions upon the content of speech in a few limited areas" — incitement, defamation, obscenity, and "true threats of violence[,]" *Counterman v. Colorado*, 600 U.S. 66, 73-74 (2023) — and Mr. Ferko's offense does not neatly fall into any of these categories.  Nor do the government, the State Department, or USCIS point to any analogous criminal offense under U.S. law.  Indeed, the government offers no argument that this Albanian offense constitutes a conviction for U.S. immigration purposes, and it notes that the State Department itself concluded that this offense was not a conviction for INA purposes.  DI 24 at 3 (citing DI 20-8, CAR0444).  No one argues that this offense is a categorical match for any criminal offense under U.S. law, and we are persuaded that no such categorical match exists.

Additionally, the length of the aggregate sentence is not at issue, as the two offenses taken together total more than seven years of confinement.  DI 20-5 at 27.

In the context of an extradition treaty between the United States and the Republic of Mexico — which stated that the treaty must not apply to any crime or offense of "a purely political character" — the Supreme Court determined that the question of whether the petitioners committed an extraditable crime (*i.e.*, one that was not "purely political") was "a question of mixed law and fact, but chiefly of fact." *Ornelas v. Ruiz*, 161 U.S. 502, 506, 509, 511 (1896). And in the context of asylum and withholding of removal, relief which is unavailable to an applicant for whom there are "serious reasons" to believe he "committed a serious nonpolitical crime" outside the United States before arriving here, the Ninth Circuit has explained that the applicant must rebut a presumption that a crime is a serious nonpolitical crime by "identify[ing] facts showing that his offense had some political aspect or political objective." *Jiang Guan v. Barr*, 925 F.3d 1022, 1031 (9th Cir. 2019) (citation modified) (citations omitted). Both inquiries involved mixed questions of law and fact, as both required consideration of the factual circumstances of the offense at issue. Likewise, we conclude that the question of whether Mr. Ferko's offenses were "purely political offenses" under sections 212(a)(2)(A)(i)(I) or (a)(2)(B) is a mixed question of law and fact because it requires us to dive into the facts of his underlying convictions to determine if they were political in nature. And the definition of "purely political offense" under the federal regulations[24] indicates that any conclusion regarding the political nature of an offense necessitates investigation of the underlying facts. We see no reasonable way to determine whether a conviction was "obviously based on fabricated charges or predicated

---

[24] 22 C.F.R. § 40.21(a)(6) defines "political offenses" and states: "The term 'purely political offense,' as used in INA 212(a)(2)(A)(i)(I), includes offenses that resulted in convictions obviously based on fabricated charges or predicated upon repressive measures against racial, religious, or political minorities." *Id.*

32

upon repressive measures against racial, religious, or political minorities" without examining the factual basis for those charges.[25]  As a district court interpreting section 212 of the INA, we cannot engage in such a factual inquiry, so we will not do so here.  For this reason alone, we should not and will not address whether Mr. Ferko's Albanian convictions render him inadmissible under section 212(a)(2)(B).  Plaintiffs' request for summary judgment on this ground is denied.

We likewise believe that any examination of whether Mr. Ferko's Albanian "Declaration[s] of Guilt" constituted "convict[ions]" for purposes of section 212(a)(2)(B) or section 101(a)(48)(A) would impermissibly require us to examine the facts underlying (and surrounding) his convictions and the proceedings in which they were obtained.  *See, e.g.*, *Esposito v. I.N.S.*, 936 F.2d 911, 914-15 (7th Cir. 1991) (explaining the evidence that the BIA could consider when presented with petitioner's argument that the foreign proceeding was a farce or fundamentally unfair); *Doe v. Gonzales*, 484 F.3d 445, 446-47, 449, 451-52 (7th Cir. 2007) (upon evaluation of a petition for review of an asylum claim, examining the underlying

---

[25] The State Department's Foreign Affairs Manual (FAM), though not binding on us, supports our understanding.  Regarding section 212(A)(2), the FAM explains:

> 22 CFR 40.21(a) states that the term political offenses includes "offenses that resulted in convictions obviously based on fabricated charges or predicated upon repressive measures against racial, religious, or political minorities."  This regulation incorporates language from the legislative history of the 1952 Act, and therefore reflects to some extent the original Congressional intent in adopting the political offense exemption.  Based on this regulation, most political offense exemptions will involve cases where you determined that the applicant was not guilty of the charges but was wrongly prosecuted because of political repression against racial, religious, or political minorities.

9 FAM 302.3-2(B)(9)(a).

facts of the petitioner's murder conviction in El Salvador and the "kangaroo court" that convicted him); *Andrade-Prado v. Garland*, 64 F.4th 386, 394-95 (1st Cir. 2023) (examining the facts underlying petitioner's rape conviction in Brazil). And again, we lack jurisdiction to address such a mixed question of law and fact when adjudicating a case that arises under section 212 of the INA. As framed by plaintiffs, any determination of the "conviction" question would require factfinding regarding the Albanian legal and political system and the circumstances of his arrest, prosecution, and convictions.[26] We therefore decline to address, and thus do not grant summary judgment on the issue of, whether Mr. Ferko's "Declaration of Guilt" constituted a "conviction" within the meaning of sections 212(a)(2)(B) or 101(a)(48)(A) of the INA.

## F.    Remand to USCIS for reconsideration of Mr. Ferko's § 1182(h) waiver application is appropriate

We have determined that Mr. Ferko's attempted murder conviction under the Albanian Code, effective as of 1985, is not a categorical match for attempted murder under U.S. law, such

---

[26] The nature of the inquiry effectively demanded by plaintiffs distinguishes this case from *Pinho* and the general reviewability rule set forth in *Santos-Salazar v. United States DOJ*, 400 F.3d 99 (2d Cir. 2005) (upon which *Pinho* relied). *See Santos-Salazar*, 400 F.3d at 104 (stating that section 1252(a)(2)(C) does not deprive federal courts of jurisdiction to determine whether a petitioner "has in fact been convicted."). In *Pinho*, the Third Circuit determined that the question of whether the petitioner was "convicted" based on a vacated conviction (there, in New Jersey court), and was thus ineligible for adjustment of status, was "a purely legal question." *Pinho*, 432 F.3d at 204. Importantly, that inquiry did not require factfinding regarding New Jersey's legal or political system nor the nature of the petitioner's arrest, prosecution, and conviction. Indeed, the *Pinho* Court announced a categorical test for classifying vacated convictions under the INA, to be used by the BIA, which did not require factfinding of the kind urged by the Ferkos: "To determine the basis for a vacatur order, the agency must look first to the order itself. If the order explains the court's reasons for vacating the conviction, the agency's inquiry must end there. If the order does not give a clear statement of reasons, the agency may look to the record before the court when the order was issued. No other evidence of reasons may be considered." *Id.* at 215. The factfinding sought by the Ferkos goes beyond the judicial review pursued, and allowed, under *Pinho* and the *Santos-Salazar* rule.

that it does not render him (1) inadmissible under 8 U.S.C. § 212(a)(2)(A)(i)(I); nor (2) ineligible for an inadmissibility waiver under 8 U.S.C. § 1182(h).  Thus, as a matter of law, and pursuant to our authority under the Declaratory Judgment Act, we declare that Mr. Ferko cannot be deemed inadmissible under § 212(a)(2)(A)(i)(I), nor ineligible for an inadmissibility waiver under 8 U.S.C. § 1182(h), by virtue of his attempted murder conviction.  Because these erroneous legal conclusions served as the basis for USCIS's decision respecting Mr. Ferko's waiver application, DI 20-3 at 5, we vacate USCIS's decision regarding Mr. Ferko's § 1182(h) waiver application and remand to USCIS for a fresh consideration of his application.[27]

## V.    CONCLUSION

We deny defendants' motion to dismiss because we have subject matter jurisdiction to review plaintiffs' challenge to USCIS's inadmissibility determination and such review would not result in an advisory opinion.  But because we lack jurisdiction to determine whether Mr. Ferko's offenses constituted "purely political offense[s]" under section 212 of the INA, we decline to address this question and do not grant summary judgment on the issue of whether Mr. Ferko is inadmissible under 8 U.S.C. § 1182(a)(2)(B).  Due to the inherently factual nature of such an inquiry, we likewise conclude that we lack jurisdiction to determine (and decline to grant summary judgment on the issue of) whether Mr. Ferko's "Declaration of Guilt" constitutes a conviction for purposes of sections 212(a)(2)(B) or 101(a)(48)(A) of the INA.  We also deny plaintiffs' motion for summary judgment on the grounds that USCIS violated the APA by contradicting its policy manual because USCIS effectively followed its procedures when it

---

[27] The government concedes that if we conclude that Mr. Ferko's attempted murder conviction is not a categorical match, then we should remand to USCIS for reconsideration of his waiver application as applied to his "breach of the regulations of guard" conviction.  DI 24 at 3.

reconsidered Mr. Ferko's waiver application.  Finally, pursuant to our authority under the

Declaratory Judgment Act, we declare that Mr. Ferko is not inadmissible under 8 U.S.C.

§ 1182(a)(2)(A)(i)(I), nor ineligible for an inadmissibility waiver under 8 U.S.C. § 1182(h), by

virtue of his attempted murder conviction under the Albanian Code effective in 1985 because

this offense is not a categorical match for attempted murder under U.S. law.  We thus grant

plaintiffs' motion for summary judgment, and deny defendants' motion for summary judgment,

on this issue.  USCIS's decision respecting Mr. Ferko's waiver application is vacated, and we

remand this matter to USCIS for renewed consideration of Mr. Ferko's waiver application.  An

appropriate order accompanies this memorandum.